IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


CYNTHIA M.,[1]                                    No. 6:20-cv-00552-HZ

                    Plaintiff,                    OPINION & ORDER

        v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                    Defendant.


Katie Taylor
Harder, Wells, Baron & Manning, P.C.
474 Willamette St.
Eugene, OR 97401
(541) 686-1969

John E. Haapala, Jr.
401 E. 10th Ave., Suite 240
Eugene, OR 97401
(541) 345-3237

        Attorneys for Plaintiff

---

[1]In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.


1 – OPINION & ORDER

Renata Gowie
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

Jeffrey E. Staples
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Cynthia M seeks judicial review of the Commissioner's final decision to deny

supplemental security income ("SSI"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g)

(incorporated by 42 U.S.C. § 1383(c)(3)). The Court affirms the Commissioner's decision.

## PROCEDURAL BACKGROUND

Plaintiff applied for SSI on July 31, 2017, alleging an onset date of July 31, 2017. Tr. 15.[2]

Her application was denied initially and on reconsideration. Tr. 15.

On March 1, 2019, Plaintiff appeared with counsel for a hearing before an Administrative

Law Judge ("ALJ"). Tr. 37. On April 11, 2019, the ALJ found Plaintiff not disabled. Tr. 29.  The

Appeals Council denied review. Tr. 1.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on "short-term memory loss," "liver problems," "neck

problems," "biliary cirrhosis," and "arthritis in knees." Tr. 426. At the time of her alleged onset

---

[2]Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative
record, filed herein as Docket No. 15.

date, she was 51 years old. Tr. 434. She has a GED and past relevant work experience as a home

attendant and electrician. Tr. 27.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which . . . has lasted or can

be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step

procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases,

agency uses five-step procedure to determine disability). The claimant bears the ultimate burden

of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in

"substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137,

140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines

whether the claimant has a "medically severe impairment or combination of impairments."

*Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not

disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly

or in combination, meet or equal "one of a number of listed impairments that the [Commissioner]

acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141;

20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if

not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any

impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work."

20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the

claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to

the Commissioner. In step five, the Commissioner must establish that the claimant can perform

other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the

Commissioner meets their burden and proves that the claimant can perform other work that

exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566,

416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful

activity after her alleged onset date. Tr. 17. Next, at steps two and three, the ALJ determined that

Plaintiff has the following severe impairments: "degenerative disc disease of the cervical and

lumbar spine, primary biliary cirrhosis, status post right ankle fracture, a depressive disorder, and

anxiety disorder, and bipolar II disorder." Tr. 18. However, the ALJ determined that Plaintiff's

impairments did not meet or medically equal the severity of a listed impairment. Tr. 18. At step

four, the ALJ concluded that Plaintiff has the residual functional capacity to perform a limited

range of medium work as defined in 20 C.F.R. § 416.967(c) with the following limitations:

> [T]he claimant is limited to lifting and/or carrying 50 pounds occasionally and 25
> pounds frequently, standing and/or walking for six hours, and sitting for six hours
> in an eight-hour workday with normal breaks. The claimant is also limited to
> understanding and carrying out simple instructions in a work environment with few
> changes and free of fast-paced production requirements. In addition, the claimant is
> limited to occasional interaction with the general public, coworkers, and supervisors.

Tr. 20. Because of these limitations, the ALJ concluded that Plaintiff could not perform her past

relevant work. Tr. 27. But at step five, the ALJ found that there are jobs that exist in significant

numbers in the national economy that Plaintiff can perform, such as "hospital cleaner" or "hand

packager." Tr. 28–29. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 29.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the

Commissioner's findings "are based on legal error or are not supported by substantial evidence

in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal

quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a

whole, including both the evidence that supports and detracts from the Commissioner's decision.

*Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is

susceptible to more than one rational interpretation, the ALJ's decision must be affirmed."

*Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v.*

*Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either

a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal

quotation marks omitted).

## DISCUSSION

Petitioner argues that the ALJ made two errors: (1) the ALJ failed to properly consider

two lay witness opinions, and (2) the ALJ improperly rejected a treating physician's opinion.

Pl.'s Br. 6, ECF 19. The Court concludes the ALJ did not err and affirms the ALJ's decision.

### I.    Lay Witness Opinions

Plaintiff argues that the ALJ erred by refusing to explain how she considered the lay

witness testimony submitted by Plaintiff's mother and Plaintiff's daughter. Op. Br. 7; *see also*

Tr. 27. Plaintiff's mother submitted a "Third Party Adult Function Report," Tr. 373–80,

describing Plaintiff's limitations. She described Plaintiff's condition and limitations in detail; for

example, she wrote that "Plaintiff has a lot of pain at night lying down," that Plaintiff "has a lot

of anxiety and depression," and that Plaintiff "sometimes . . . is so depressed [that] she is hard to

get along with." Tr. 373–77.

Plaintiff's daughter also submitted a letter supporting her mother's application for

benefits. Tr. 486–87. She wrote that the activities Plaintiff once enjoyed, like "camping, road

trips, swimming, [and] . . . evening walks . . . became . . . increasingly more difficult and painful

to the point we stopped doing everything." Tr. 486. She also wrote that Plaintiff is prone to mood

swings, that Plaintiff is often tired, and that Plaintiff's symptoms prevent her from earning an

income. Tr. 487.

> Evaluating these lay witness statements, the ALJ wrote:
>
> Finally, I note the submission of evidence regarding the claimant's functioning
> from nonmedical sources, specifically, her mother, Dorothy [], and her daughter,
> Jessica [] (Exhibit Bl2E; Bl5E). This evidence, set forth in a third party function
> report authored by the claimant's mother in September 2017 and in an undated letter
> authored by the claimant's daughter received in February 2019 has been considered
> in this case. However, pursuant to 20 CFR 416.920c(b), unlike with the medical
> opinions and prior administrative medical findings discussed above, I am not
> required to articulate how evidence from non-medical sources was considered.

Even assuming that the ALJ erred by refusing to articulate how she considered the

evidence submitted by Plaintiff's mother and daughter, the Court finds that any such error was

harmless. When an ALJ errs, the Court will still uphold the ALJ decision "where the error is

harmless, meaning that it is inconsequential to the ultimate nondisability determination[.]"

*Laborin v. Berryhill*, 867 F.3d 1151, 1154-55 (9th Cir. 2017). In other words, an error is

harmless if the ALJ would have reached the same result absent the error. *See id.* Specifically,

"[w]here lay witness testimony does not describe any limitations not already described by the

claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply

equally well to the lay witness testimony," the ALJ's failure to expressly reject the additional lay

witness testimony is harmless. *Molina v. Astrue*, 674 F.3d 1104, 1117 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

Here, the evidence offered by Plaintiff's mother and daughter mirrored the Plaintiff's self-report. *Compare* Tr. 486-87 (daughter's letter) *and* Tr. 373–80 (mother's report) *with* Tr. 438-45 (Plaintiff's function report). They all described similar mental and physical symptoms; for example, trouble walking, anxiety, and depression. The ALJ discussed Plaintiff's physical symptoms—like pain and trouble walking—and discounted Plaintiff's testimony for reasons she does not challenge (e.g., conflicting medical evidence). *See* Tr. 21–23. Those same reasons apply equally well to the substantially similar testimony regarding Plaintiff's physical limitations offered by her mother and daughter. The same is true for the testimony regarding Plaintiff's mental symptoms. *See* Tr. 23–27 (evaluating Plaintiff's mental symptoms testimony). The ALJ thoroughly evaluated Plaintiff's testimony regarding her mood swings, her anxiety, and her depression—the same symptoms described in the testimony of Plaintiff's mother and daughter. Like the physical symptoms, Plaintiff does not challenge the ALJ's reasons for rejecting her mental symptoms testimony—e.g., Plaintiff's failure to seek recommended treatment and her ability to complete daily activities—and these offered reasons apply equally well to the mother and daughter's substantially similar statements. Thus, even assuming the ALJ erred in refusing to articulate how she considered the additional lay witness testimony, such error was harmless.[3] *See Molina*, 674 F.3d at 1117.

## II.    Medical Opinion Evidence

New regulations about weighing medical opinion evidence apply to claims filed on or after March 27, 2017. Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819,

---

[3]The Government only argues harmless error. *See* Gov't Br. 8–9.

82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. Under the new

regulations, ALJs are no longer required to give deference to any medical opinion, including

treating source opinions. *Id.* Instead, the agency considers several factors. 20 C.F.R. §§

404.1520c(a), 416.920c(a). These are: supportability, consistency, relationship to the claimant,

specialization, and "other factors." 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The

"most important" factors in the evaluation process are supportability and consistency. 20 C.F.R.

§§ 404.1520c(b)(2), 416.920c(b)(2).

Under this framework, the ALJ is required to explain how supportability and consistency

were considered and may explain how the other factors were considered. 20 C.F.R

§§ 404.1520c(b)(2), 416.920c(b)(2). When two or more medical opinions or prior administrative

findings "about the same issue are both equally well-supported . . . and consistent with the record

. . . but are not exactly the same," the ALJ is required to explain to how the other factors were

considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

Plaintiff argues that the ALJ improperly rejected the opinion of Bryan D. Yates, M.D.,

who opined that, during episodes of mania or depression, Plaintiff would be unable to function

successfully in a work environment or maintain a work schedule. Tr. 26; Tr. 1546 (Dr. Yates'

report). The ALJ found Dr. Yates' opinion unpersuasive because it included "no objective

findings" in support and because it was "inconsistent" with a mental examination that he

conducted of the Plaintiff on the same date—where he diagnosed Plaintiff's bipolar II disorder as

"stable." Tr. 26.

In his opinion, Dr. Yates answered several written questions posed by Plaintiff's attorney.

Tr. 1545–47. One question asked, "What limits do [Plaintiff's] symptoms impose…particularly

as they might affect her ability to function in a work-setting?" Tr. 1546. Dr Yates responded:

"During episodes of mania or depression she would be unable to function at a level sufficient for competitive employment." Tr. 1546. In response to a follow-up question about whether Plaintiff could sustain a simple, routine, low-stress job, Dr. Yates stated that her symptoms "would make it extremely difficult [for Plaintiff] to maintain a work schedule." Tr. 1546. The same day he answered Plaintiff's attorney's questions, Dr. Yates examined Plaintiff, noting that she had a normal gait and stance and a euthymic, stable mood. Tr. 1553–57.

The Court concludes the ALJ considered the appropriate factors and that her decision to discount Dr. Yates' opinion was supported by substantial evidence. The ALJ emphasized the two most important factors, supportability and consistency, in finding that Dr. Yates' opinion was unpersuasive. Tr. 26. And there is substantial evidence in the record supporting both factors. For supportability, Dr. Yates offered no objective evidence to support his conclusions that Plaintiff's symptoms would prevent her from "function[ing] at a level sufficient for competitive employment" or "maintain[ing] a work schedule." Tr. 1546. Rather, these were general assertions made in response to a form provided by Plaintiff's attorney. And to the extent that Plaintiff argues that the ALJ's rejection of Dr. Yates' testimony meant that the ALJ was—improperly—using evidence of a single "good day" to imply that Plaintiff's bipolar disorder had been treated, such an argument misstates the ALJ's decision. In rejecting Dr. Yates' opinion, the ALJ did not conclude that Plaintiff's bipolar condition had been treated based on Dr. Yates' report that, on the day he completed the report, Plaintiff presented as "stable" and "euthymic"; instead, the ALJ found Dr. Yates' opinion regarding Plaintiff's limitations unpersuasive because it was inconsistent with Dr. Yates's contemporaneous report that Plaintiff's mood was stable and euthymic. *See Garrison v. Colvin*, 759 F.3d 995, 1018 n.23 (9th Cir. 2014). In other words, the ALJ used Dr. Yates' inconsistent report as a reason for rejecting his testimony regarding

Plaintiff's work limitations—not as a reason for concluding her condition had been successfully treated. *See id.* ("The very nature of bipolar disorder is that people with the disease experience fluctuations in their symptoms, so any single notation that a patient is feeling better or has had a 'good day' does not imply that the condition has been treated.").

Moreover, looking to the Plaintiff's treatment history with Dr. Yates, those records indicate that Plaintiff's mood had been improving and stable for some time. At a May 23, 2018 appointment, Dr. Yates evaluated Plaintiff's mood as "euthymic" and noted that Plaintiff felt she was improving and "feels less impulsive." Tr. 1098. At a June 25, 2018 appointment, Dr. Yates described Plaintiff's mood as "stable . . . less impulsive . . . [and] . . . less labil[e]." Tr. 1091. Thus, not only was Dr. Yates' testimony regarding Plaintiff's limitations consistent with the contemporaneous report, as the ALJ stated, but it was also inconsistent with Dr. Yates' prior evaluations of Plaintiff. Therefore, the ALJ's decision to reject Dr. Yates' limitations report adhered to the new regulations and was supported by substantial evidence.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED:___March 28, 2022_____.

_____
MARCO A. HERNÁNDEZ
United States District Judge